**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:20-cv-24654**

CLARUS ENTERPRISES – RESIDUALS
ACQUISITIONS, LLC,

    Plaintiff,

v.

ELITE PAYMENTS CORP. and JOSE BENITEZ,

    Defendants.

_____

**COMPLAINT**

Plaintiff Clarus Enterprises – Residuals Acquisitions, LLC ("Clarus") sues defendants Elite Payments Corp. ("EPC") and Jose Benitez ("Benitez" and together with EPC, "Defendants") and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because Clarus and Defendants are citizens of different states.

2. Clarus is a limited liability company owned by Randall Tillim, a citizen of Maryland.

3. EPC is a corporation organized under the laws of Florida with its principal place of business in Florida.

4. Benitez is an individual and a citizen of Florida.

5. As further detailed herein, Clarus sues Defendants for breach of contract and fraud in connection with a Residual Asset Purchase Agreement (the "Purchase Agreement") under which Clarus paid $819,980.30 for certain assets.

6. The Court has personal jurisdiction over EPC because it is organized under Florida law, because EPC has its principal place of business in Florida, and because the Purchase Agreement relates to property located in Florida.

7. The Court has personal jurisdiction over Benitez because he is a citizen of Florida and because he executed the Purchase Agreement, which relates to property located in Florida, on behalf of EPC.

8. Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) & (c)(2) because Defendants are residents of the Southern District of Florida and because a substantial part of the events or omissions giving rise to Clarus's claims occurred in the Southern District of Florida.

## GENERAL ALLEGATIONS

### Payment Processing Companies and Independent Sales Organizations

9. This is a contract dispute arising from credit card payment processing services.

10. When a customer makes a credit card purchase from a merchant, a certain percentage of the transaction, commonly known as a "swipe fee," is withheld from the merchant to pay for the credit card service.

11. The swipe fee is typically split between the issuer of the credit card and the payment processor that processes the payment.

12. Payment processors typically do not market their services directly to merchants; instead, they retain an independent sales organization ("ISO") to do so.

13. In return, when the ISO signs up a given merchant, the payment processor pays the ISO a certain portion of the swipe fees that the payment processor receives from the merchant.

14. The payments the ISO receives from the payment processor are commonly known as "residuals."

### The ISO Agreement between EPC and Paysafe

15. On July 25, 2018, EPC entered an "ISO Agreement" with Paysafe Processing Solutions LLC ("Paysafe").

16. Pursuant to the ISO Agreement, EPC agreed to market Paysafe's services to merchants in southern Florida.

17. Pursuant to the ISO Agreement, EPC signed up various merchants, including 16 locations of the Sushi Sake restaurant franchise (collectively, "Sushi Sake").

18. Pursuant to the ISO Agreement, EPC was paid residuals out of the swipe fees that Paysafe received from the merchants, including from Sushi Sake.

### The Purchase Agreement between Clarus and EPC

19. On September 2, 2020, EPC entered the Purchase Agreement with Clarus that is the subject of this case.

20. The effective date of the Purchase Agreement is September 1, 2020 (the "Effective Date").

21. The Purchase Agreement was executed by Benitez, as CEO of EPC.

22. Section 5.9 of the Purchase Agreement provides that the Purchase Agreement itself, as well as the legal relations between the parties arising out of the Purchase Agreement, are to be governed and construed in accordance with the laws of Maryland.

23. Pursuant to Section 1.1 of the Purchase Agreement, EPC agreed to sell to Clarus its rights under the ISO Agreement, including its right to receive residuals thereunder.

24. EPC further agreed to sell to Clarus its rights under a separate contract with National Processing Company, another payment processor.

25. Pursuant to Section 1.3.1 of the Purchase Agreement, and in consideration for EPC's assignment of its rights, Clarus agreed to pay EPC $819,980.30 on the Effective Date, which payment Clarus made.

26. Pursuant to Sections 1.3.2 and 1.3.3 of the Purchase Agreement, Clarus further agreed to pay certain additional amounts to EPC if the residuals it acquired under the Purchase Agreement exceeded certain amounts during the first year after the Effective Date and the second year after the Effective Date.

27. Pursuant to the Section 2.6 of the Purchase Agreement, EPC provided a list of the merchants for which it was entitled to receive residuals as of the Effective Date.

28. The list of merchants is attached to the Purchase Agreement as Exhibit A.

29. The list of merchants includes, among others, Sushi Sake.

30. EPC expressly represented, warranted, and covenanted that the list of merchants was correct and expressly acknowledged that Clarus was relying on this representation in entering the Purchase Agreement.

31. EPC further represented that it had not received any notice of default or termination from any of the listed merchants and that it did not know of any bankruptcy of any of the listed merchants.

32. Pursuant to Section 2.7 of the Purchase Agreement, EPC further represented that none of its representations or warranties contained any untrue statement of a material fact or omitted to state any material fact necessary to make the statements in the Purchase Agreement not misleading.

33. EPC further represented that there was no fact or development known to EPC which adversely affected or which might in the future adversely affect the listed merchants.

34. Pursuant to Section 3.1 of the Purchase Agreement, EPC further agreed that for a period of five years after the Effective Date, neither EPC nor any entity for which EPC (including any of EPC's shareholders, officers and/or employees, referral sources and or agents) had or acquired an ownership interest or in which EPC (including any of EPC's shareholders, officers and/or employees, referral sources and or agents) acted as an officer, director, owner, or consultant, would (i) enter into any agreement with or solicit, directly or indirectly, any of the listed merchants, or (ii) interfere with, disrupt or attempt to disrupt any past, present or prospective business relationship, contractual or otherwise, related to or arising from the listed merchants.

### Defendants' Breach of Contract and Fraud

35. Unbeknownst to Clarus, roughly two weeks before the Effective Date, Sushi Sake had stopped using Paysafe's services, meaning that EPC was no longer entitled to residuals for Sushi Sake under the ISO Agreement.

36. Clarus discovered that Sushi Sake had stopped using Paysafe's services only after Clarus entered the Purchase Agreement, when the monthly residuals under the Purchase Agreement were less than expected.

37. Upon information and belief, Defendants knew that Sushi Sake had stopped using Paysafe's services when the parties entered the Purchase Agreement and when Defendants made the representations contained therein.

38. Upon information and belief, Defendants or an entity with which they were associated solicited Sushi Sake away from using Paysafe's services.

## COUNT I

### Breach of Contract – EPC

39. Plaintiff adopts the foregoing paragraphs by reference.

40. The Purchase Agreement is a valid and enforceable contract between Clarus and EPC.

41. Clarus complied with its obligations under the Purchase Agreement.

42. EPC breached its obligations under the Purchase Agreement by, upon information and belief, falsely representing that EPC was entitled to receive residuals for Sushi Sake and soliciting Sushi Sake.

43. Clarus has suffered damages as a result of EPC's breach.

44. Clarus has retained the undersigned counsel as a result of EPC's breach.

45. Pursuant to Section 5.3 of the Purchase Agreement, Clarus is entitled to an award of its attorneys' fees and court costs.

## COUNT II

### Breach of Contract – Benitez

46. Plaintiff adopts the foregoing paragraphs by reference.

47. Benitez is liable for EPC's breach of contract under corporate veil piercing principles.

48. Piercing the corporate veil is necessary to prevent fraud or to enforce a paramount equity because Benitez executed the Purchase Agreement and thus made the fraudulent representations contained therein.

49. Further, upon information and belief, Benitez solicited Sushi Sake away from using Paysafe's services.

50. Alternatively, and upon information and belief, EPC is an alter ego of Benitez because Benitez completely dominated the finances, policy, and business practices of EPC; because Benitez utilized his control of EPC to commit fraud; and because Benitez's control of EPC and his acts of fraud caused injury to Clarus.

## COUNT III

### Fraudulent Misrepresentation – EPC

51. Plaintiff adopts the foregoing paragraphs by reference.

52. Benitez, acting on behalf of EPC, made a false representation in the Purchase Agreement by indicating that EPC was entitled to receive residuals from Sushi Sake.

53. Upon information and belief, Benitez knew this statement was false.

54. Alternatively, Benitez made this statement with such reckless indifference to the truth as to be equivalent to actual knowledge of falsity.

55. Upon information and belief, Benitez made the misrepresentation for the purpose of defrauding Clarus.

56. Clarus had the right to rely on the misrepresentation and did indeed rely on it.

57. Clarus would not have entered the Purchase Agreement absent the misrepresentation.

58. Clarus suffered damages as direct result of the misrepresentation.

59. Clarus has retained the undersigned counsel as a result of the misrepresentation.

60. Pursuant to Section 5.3 of the Purchase Agreement, Clarus is entitled to an award of its attorneys' fees and court costs.

## COUNT IV

### Fraudulent Misrepresentation – Benitez

61. Plaintiff adopts the foregoing paragraphs by reference.

62. As the individual who executed the Purchase Agreement, and thus made the misrepresentations contained therein, Benitez is individually liable for fraudulent misrepresentation.

**WHEREFORE,** Clarus respectfully requests that this Court enter a judgment against Defendants that includes:

A. A joint and several award of actual damages in the amount of $819,980.30;

B. A joint and several award of punitive damages in an amount no less than $1,639,960.60;

C. Costs of suit;

D. An award of Clarus's attorney fees; and

E. Such other relief as the Court deems just and proper.

Dated: November 12, 2020

                                        Respectfully submitted,

                                        BALLARD SPAHR LLP

                                        /s/ Jenny N. Perkins
                                        Jenny N. Perkins (Bar No. 77570)
                                        perkinsj@ballardspahr.com
                                        1735 Market Street, 51st Fl.
                                        Philadelphia, PA 19103
                                        Telephone: (215) 864-8378
                                        Facsimile: (215) 864-8999

                                        Constantinos G. Panagopoulos (Pro hac vice forthcoming)
                                        cgp@ballardspahr.com
                                        Matthew D. Lamb (Pro hac vice forthcoming)
                                        lambm@ballardspahr.com
                                        1909 K Street, NW, 12th Floor
                                        Washington, DC 20006
                                        Telephone: (202) 661-2200
                                        Fax: (202) 661-2299

                                        *Counsel for Plaintiff*